IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DARREL DEWAYNE FULLER**                                              **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO.: 3:22-cv-480-KHJ-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Darrel Dewayne Fuller brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security Administration denying his claim for supplemental security income. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be affirmed and this matter be dismissed with prejudice.

## PROCEDURAL HISTORY

On January 14, 2020, Plaintiff applied for supplemental security income at age 50, alleging that he had been disabled since January 7, 2020, due to seizures, high blood pressure, acid reflux, short term memory, and weakness in his hand. (Administrative Record [9] at 26, 32, 207, 230). After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") conducted a hearing, and on October 27, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. ([9] at 26-34). Plaintiff then appealed the ALJ's decision to the Appeals Council. On June 28, 2022, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([9] at 5-7). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In her October 27, 2021, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ noted that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date—January 7, 2020. ([9] at 28). At step two, the ALJ found that Plaintiff's epilepsy was a severe impairment but found that the following impairments were not severe: GERD,[2] hypertension, hyperlipidemia, mild lumbar degenerative changes, obesity, and anxiety. ([9] at 28). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix. 1. ([9] at 30).

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] GERD stands for gastroesophageal reflux disease. *Dorland's Illustrated Medical Dictionary* 739 (29th ed. 2000).

2

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform medium work as defined by 20 C.F.R. § 416.967(c)[4] with the following exceptions:

> he can lift and/or carry 50 pounds occasionally and 25 pounds frequently. The claimant can stand and/or walk for six hours and sit for six hours in an eight-hour workday. He can frequently climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to extremes in temperature and vibration and cannot tolerate any exposure to vibrating and dangerous machinery. He cannot work near or on open bodies of water, work at unprotected heights, or perform commercial driving.

([9] at 30-32).

At step four, the ALJ found that Plaintiff had no past relevant work. ([9] at 32). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. ([9] at 33). Accordingly, the ALJ determined that Plaintiff was not disabled.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[3] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 40 C.F.R. § 416.967(c).

3

*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*.

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff presents two issues: (1) whether the ALJ erred in her analysis of the Plaintiff's mental impairments and failed to account for his memory loss in the RFC and (2) whether the ALJ erred in her analysis of Plaintiff's seizure disorders. ([11] at 3).

**Issue 1: Plaintiff's Mental Impairments and Memory Loss**

Plaintiff first argues that the ALJ should have found that his memory loss is a severe impairment, and that, even if it is not severe, she should have included limitations related to his mental impairments in the RFC. At step two, the burden of proof rests on the claimant to show that he has a medically determinable impairment that qualifies as a severe impairment. *See Carey v. Apfel*, 230F.3d 131, 135 (5th Cir. 2000). However, the failure to find a particular impairment

severe at step two is not reversible as long as the ALJ finds that at least one other impairment was severe." *See* 20 C.F.R. § 404.1520(a)(4)(ii)); *see also Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015) (finding any failure to find an additional impairment severe at step two to not justify remand when the ALJ proceeded to step five); *see also Allman v. Colvin*, Soc. Sec. Rep. P 15485C (10th Cir. 2016) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). Even if an impairment is found non-severe at step two, an ALJ must consider at step four, "the limiting effects of all [a claimant's] impairment(s), *even those that are not severe*, in determining [RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e) (emphasis added); *see also* Social Security Ruling 96–8P, 1996 WL 374184, at *5.

The ALJ thoroughly considered Plaintiff's claim that he experiences memory problems, stating:

> [a]s for claimant's allegations of weakness and memory loss, treatment records document some subjective complaints; however, there are no objective examination findings of … memory deficit…. [E]xamination on May 24, 2020, revealed normal mentation and memory. On December 11, 2020, the claimant was started on Vitamin B-1 for nerve pain and memory problems, and subsequent records do not indicate any further complaints.

([9] at 32).  Moreover, the ALJ found that Plaintiff had a medically determinable mental impairment and then proceeded to rate the degree of functional limitation based on the extent to which Plaintiff's mental impairments interfere with his "ability to function independently, appropriately, effectively, and on a sustained basis" as required by 20 C.F.R. § 404.1520a(c)(2). In doing so, the ALJ identified the four broad functional areas set forth in 20 C.F.R. §

5

404.1520a(c)(3)[5] and determined whether Plaintiff's degree of limitation was "none, mild, moderate, marked, [or] extreme" in each of the areas. *Id.*

In the functional area of understanding, remembering, or applying information, the ALJ found that Plaintiff had no limitation. ([9] at 29). She noted that Dr. Michael Whelan found that Plaintiff "did not display aphasia or confusion during the exam and that he essentially performed well on mental status testing." ([9] at 698). She found it significant that Plaintiff lives by himself in an apartment and is able to prepare simple meals for himself.

In the area of interacting with others, the ALJ found no limitation. ([9] at 29). Plaintiff reported that he has friends who come by to visit with him, and that he was looking forward to church reopening after COVID-19. The ALJ also noted that Dr. Whelan found Plaintiff did not need treatment for anxiety.

In the area of concentrating, persisting, or maintaining pace, the ALJ found no limitation. ([9] at 29). The ALJ found it significant that Plaintiff was able to do "serial sevens" correctly and could total six quarters. Plaintiff also admitted to preparing simple meals and driving a car.

In the final functional area of adapting and managing oneself, the ALJ found that he has no limitation. ([9] at 29). The ALJ found it significant that Plaintiff has not been treated for a psychiatric disorder and that Dr. Whelan found that he did not need treatment for anxiety. ([9] at 29).

Accordingly, while the ALJ did not include any mental limitations in the RFC, she thoroughly considered Plaintiff's mental impairments and their impact on his ability to work. The ALJ then proceeded past step two and considered all of Plaintiff's impairments in

---

[5] These are "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).

determining the RFC. The ALJ retains the sole responsibility for determining an individual's RFC based on all of the relevant evidence. *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995); 20 C.F.R. § 416.946(c); SSR 96–8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but may determine only whether substantial evidence is present. *See Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis v. Bowen,* 837 F.2d at 1378, 1383 (5th Cir. 1988). The ALJ's finding is supported by substantial evidence.

Plaintiff also claims that the ALJ failed to properly consider the Comprehensive Mental Status Examination conducted by Dr. Whelan on February 8, 2021. The record establishes otherwise. The ALJ expressly considered Dr. Whelan's report and even found it to be "persuasive" because it was "supported by objective mental status examination findings and consistent with the claimant's lack of mental health treatment." ([9] at 32).

The ALJ noted that Dr. Whelan found that Plaintiff "displays no aphasia or confusion during the exam, and essentially performs well on mental status testing." ([9] at 441). Dr. Whelan concluded that Plaintiff "may have a mild anxiety disorder" but that he does not think Plaintiff "needs treatment for anxiety." He opined that Plaintiff "might need some counseling to help him handle stress better." ([9] at 441). He stated that if Plaintiff were tested, "he would probably score in the borderline range. Short-term memory impairment is certainly likely as his description seemed genuine, but his sister says she has noticed his memory deteriorating as his seizures have been poorly controlled." ([9] at 441). He found that Plaintiff was "competent to manage money." ([9] at 441).  The ALJ also considered that during Dr. Whelan's exam, Plaintiff was able to do "serial sevens" correctly and could total six quarters. ([9] at 29).

7

Additional evidence also supports this finding. During the hearing, Plaintiff admitted that he does his own laundry, cleans his house, and sometimes does his own shopping. ([9] at 55-56). Plaintiff testified that he knows how to drive a car and has a driver's license. ([9] at 44-45). On May 24, 2020, Plaintiff's mental activity and memory were normal. ([9] at 487). On February 9, 2021, Brymon Williams, a Medical Consultant, reviewed Plaintiff's records including the consultative examination from Dr. Whelan the day prior, and found that Plaintiff was not disabled. ([9] at 102). Additionally, at the hearing, the ALJ asked Plaintiff what he does to help with his memory problems, and Plaintiff admitted he does not use a calendar, make lists, or do anything to help him remember things except ask other people if they remember. ([9] at 49). Plaintiff's daily activities, ability to care for himself, the medical record, and his lack of mental health treatment support the ALJ's decision. ([9] at 32). As the decision is supported by substantial evidence, Plaintiff is not entitled to relief on this issue.

**Issue 2: Plaintiff's Seizure Disorder**

Plaintiff next argues that the ALJ failed to properly consider his seizure disorder. The ALJ found that Plaintiff's epilepsy is a severe impairment but determined that "[t]he medical evidence of record documents a long history of seizures that have been largely controlled with prescribed medications." She concluded by stating "[r]ecords of the claimant's seizures and treatment are consistent with his testimony that he does not have seizures when he takes his medication as prescribed." ([9] at 31).

In support of his claim that he is entitled to social security disability benefits, Plaintiff submitted a letter from Melissa B. Jackson, a Family Nurse Practitioner with the Jackson Medical Mall-Neurology Clinic. ([9] at 10). The letter is new evidence as it is dated August 3, 2022, after both the ALJ, and the Appeals Council had denied Plaintiff's claim.

When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). However, a remand is justified only if the claimant makes "a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Id.* Evidence is not material for purposes of a remand unless it "relates to the time period for which disability benefits were denied." *Id.* Furthermore, evidence is not material if it relates "to the deterioration of a previously non-disabling condition resulting after the period for which benefits are sought." *Id.* at 555 n. 14.

> The letter from Nurse Jackson states:
>
> I currently treat Mr. Darrel Dewayne Fuller in my neurology clinic. He has a known diagnosis of intractable generalized epilepsy which means his seizures are unable to be properly controlled even with medications. He has had seizures since childhood.
>
> Mr. Fuller is not able to work as he would be a liability with his medical condition. He struggles to pay for his medications monthly and is assisted by his sister. In return he tries to help her around her home as much as possible.
>
> It is in my opinion that Mr. Fuller should remain on permanent disability. He is not able to work due to his condition and he must have his medications in order to avoid status epilepticus that could result in brain damage.

([9] at 10). As an initial matter, Plaintiff provides no explanation, let alone good cause, why this letter could not be obtained prior to the ALJ's decision. See *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989) ("The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement."). Nevertheless, there is not a reasonable probability that Plaintiff's new evidence would have changed the outcome of his disability determination.

Pursuant to Social Security Administration regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions,"

including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency factors, but need not explain how she considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

Nurse Jackson's letter is not persuasive because her opinions are not supported by her own treatment records or consistent with the record as a whole. Treatment records indicate only one visit with Nurse Jackson on August 3, 2022, the day that she wrote the letter. ([9] at 12-19). Moreover, Nurse Jackson makes only conclusory statements that are not supported by the record. While Nurse Jackson claims that Plaintiff "is not able to work," the law is clear that "the ALJ has sole responsibility for determining a claimant's disability status." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Additionally, while she claims that "his seizures are unable to be properly controlled even with medication," the record does not support this claim. ([9] at 10).

As acknowledged by the ALJ, on February 18, 2020, Plaintiff reported to the emergency room claiming that he had two seizures after being out of his medication for four days. ([9] at 31, 541). On July 23, 2020, Plaintiff reported he had not had a seizure in two months. ([9] at 31, 422). On September 10, 2020, Plaintiff reported that he had not had a seizure since his last visit. ([9] at 31, 605). While Plaintiff suffered a seizure on October 30, 2020, and he claimed to have been compliant with his medication, a lab test revealed that his Dilantin was at subtherapeutic levels. ([9] at 31, 663).

Treatment notes from March 25, 2021, with Jackson-Hinds Comprehensive Health Center indicate that Plaintiff was admitted to the University of Mississippi Medical Center on March 15, 2021 for seizures, however, no record of that admission exists in the file and there is no determination about whether Plaintiff was taking his medication at that time. ([9] at 31, 596). Additionally, Plaintiff testified at the hearing that his medication properly controls his seizures.

> ALJ:    [W]hen you take the medicine, does it control your seizures?
>
> Plaintiff:    Yes, ma'am.

([9] at 31, 47).

Fifth Circuit law is clear that statements by physicians, even a claimant's treating physician, that are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence" may be discounted or rejected. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). The ALJ's determination that Plaintiff's seizures are controlled by medication is supported by substantial evidence, and the after-the-fact submission of Nurse Jackson's letter does not and would not change the outcome.

Plaintiff also claims that he cannot afford the medication for his seizures, and that the ALJ failed to consider his inability to pay in her opinion. A claimant's failure to seek or comply with medical treatment is relevant to evaluate his alleged symptoms. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). An ALJ, however, is required to review the possible reasons a claimant may not seek or comply with medical treatment. The inability to afford treatment may justify a failure to follow prescribed treatment. SSR 82-59. "If . . . the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it,

'the condition that is disabling in fact continues to be disabling in law.'" *Lovelace*, 813 F.2d at 59 (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

"The requirement that the ALJ consider a claimant's inability to pay for medical treatment does not apply, however, unless the claimant has "shown that [he] did not have access to free or low cost medical services." *Klaus v. Colvin*, 2016 WL 4573878, at *15 (N.D. Tex. Aug. 4, 2016). Plaintiff was required to explore "all possible resources," such as clinics, charitable agencies, and public assistance programs. SSR 82-59. Without evidence of Plaintiff's efforts to obtain treatment, "the ALJ's purported failure to comply with SSR 82-59 is no reason to remand Plaintiff's request for benefits." *Rouner v. Colvin*, 2015 WL 1289794, at *15 (S.D. Tex. Mar. 20, 2015), *see also Chavira v. Astrue*, 2012 WL 948743, at *24-25 (S.D. Tex. Feb. 29, 2012).

As previously mentioned, Plaintiff applied for supplemental security income on January 14, 2020, alleging that his disability began on January 7, 2020. ([9] at 26, 32, 207, 230). However, this was not the first time that Plaintiff applied for supplemental security income. Plaintiff filed a claim in November of 2018. ([9] at 73). Then, as now, Plaintiff argued that he could not afford his medications. In December of 2019, an ALJ denied Plaintiff's claim, rejecting this argument. The ALJ stated:

> With regards to the claimant's inability to afford medication, records show that he was advised to follow up at the Medical Mall due to lack of insurance and he agreed to do so; however, there is no evidence that he actually sought such services. Similarly, it was noted that social work would be contacted regarding his inability to pay for medications and he was given the number to financial counseling assistance and instructed to contact them, but it does not appear that the claimant chose to pursue such options.

([9] at 77).

Turning back to the current claim for social security income, all but one of the record examples provided by Plaintiff that he could not afford his medication occurred during the time period of the previous claim. ([9] at 308, 309, 336, 339, 342, 345, 360, 364, 378, 386, 387, 621). The only record made after the relevant disability onset date is from Nurse Jackson's letter, which states only that Plaintiff "struggles to pay for his medications."[6] ([9] at 10). As previously discussed, Nurse Jackson makes only conclusory statements, and Plaintiff has pointed to no other record during the relevant time period showing an inability to afford medications.[7] Accordingly, remand is not required on this basis.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED, and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed

---

[6] As previously stated, this letter is dated after the decisions of the ALJ and Appeals Council.

[7] In fact, one of the records submitted along with Nurse Jackson's letter undercuts Plaintiff's claim. A bill from August 3, 2022, shows that Plaintiff owed only a $3.00 copay for his August 3, 2022, visit with Nurse Jackson and that he paid for the visit on that day. ([9] at 11).

findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

    This the 4th day of August, 2023.

                                            s/Michael T. Parker
                                            UNITED STATES MAGISTRATE JUDGE